**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

COREY FRAZIER,

    Petitioner,

v.

                                    CASE NO. 2:09-CV-11355
                                    HONORABLE MARIANNE O. BATTANI
                                    UNITED STATES DISTRICT COURT

DEBRA SCUTT,

    Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

       Corey Frazier, ("Petitioner"), confined at the Kinross Correctional Facility in Kincheloe, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction and sentence for first–degree murder, M.C.L.A. 750.316; felon in possession of a firearm, M.C.L.A. 750.224f; possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### I. Background

       Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with co-defendant John

Henry Williams. [1]  Mr. Williams was convicted of first-degree felony murder. Petitioner's conviction arose out of the shooting death of Mr. Gerald Gadie at his home in Detroit, Michigan.

On the afternoon of May 27, 2006, an unidentified person called 911 from a payphone to report a dead body at a home located at 19362 Hull Street in Detroit. When police responded to investigate, they discovered that the doors to the house were locked and the windows were barred.  Officers used a fishnet to go between the bars of an open window to fish the house keys off of a coffee table, in order to access the house.  Upon entry into the house, the police discovered the victim's body in the basement lying face-up on the floor, with a single, near-contact gunshot wound to his head.  Police discovered $6,285.00 in cash and a bag of suspected Ecstasy pills in a box on the television stand in the living room. (Tr. 11/13/2006, pp. 128-35, 179-81; 189-90).

Kareemah Greer, the victim's next door neighbor, called Williams, who sold drugs with the victim, and informed him that Mr. Gadie was dead.  Williams replied, "What - I'll call you back" and hung up.  About fifteen to twenty minutes later, Williams and petitioner, who served as Gadie's bodyguard, drove up and parked their car about two houses down from Gadie's house.  Petitioner walked

---

[1]  Petitioner was originally convicted of one count of first-degree premeditated murder and one count of first-degree felony murder.  On appeal, the Michigan Court of Appeals remanded the case to the trial court to modify the judgment of sentence to reflect that petitioner was convicted of one count of first-degree murder under alternative theories of premeditated and felony murder.

2

over to Greer, hugged her, and said, "It's going to be okay; we going to find out who did this." However, neither Williams nor petitioner attended the victim's wake or funeral. (Tr. 11/14/2006, pp. 8-9; 31-37). On June 4, 2006, Williams admitted to Greer that he had participated in the armed robbery of the victim, although he claimed that petitioner was responsible for shooting the victim. (*Id.* at pp. 41-42).

Around the time of the funeral, Williams telephoned Gadie's cousin, Deville Thedford. Richard Peeples, another one of the victim's cousins, overheard the conversation. Williams told Peeples and Thedford that he went with petitioner to Gadie's house, where the victim let them in because the two men owed Gadie money. Petitioner and Gadie began fighting over money. Petitioner was angry because he thought that Gadie was not paying him. Williams told Thedford and Peeples that petitioner ordered Gadie to go into the basement, so that he and Williams could rob him. Petitioner asked Williams to go through the victim's house while petitioner went into the basement with Gadie. While Williams was going up to the second floor of the house, he heard a gunshot. Williams told Peeples and Thedford that he did not know that petitioner was going to kill their cousin and that he felt bad about it. Mr. Williams informed the men that he called 911 from a payphone twice, once to inform the police that someone was injured, and subsequently to indicate that there was a dead body in the house. Williams informed the men that he was going to turn himself in to the police. (*Id.* at pp. 116-22, 127, 170-78).

3

After the funeral, the victim's brother, Wayne Gadie, received a phone call from petitioner. Petitioner told Wayne Gadie that Williams had killed his brother and that he had nothing to do with it. Petitioner explained to Wayne Gadie that he went into the bathroom, heard a gunshot, came out, and observed Williams holding a gun. Petitioner admitted that after the victim was shot, he and Williams robbed the house, with Williams taking Mr. Gadie's diamond Rolex watch. (Tr. 11/15/2006, pp. 55-62).

Donnell Hornbuckle testified that after Gadie had been shot, Williams called and informed him that petitioner had killed the victim. Williams indicated that petitioner ordered Gadie into the basement, after which Williams heard a gunshot. (*Id.* at pp. 98-99).

On November 3, 2006, while awaiting trial, Williams and petitioner were incarcerated in the Wayne County Jail with an inmate named Larry Oldham. Oldham overheard petitioner tell Williams to get some telephone records. Petitioner then stated to Williams, "Bitch, I wish I would have went on let you leave like I started to." Petitioner further advised Williams to testify in court that he left the house before Gadie was killed, explaining, "If you go in here and say [Gadie] was already—that you had already left, I will be able to handle this easier." (Tr. 11/14/2006, pp. 205-11).

Petitioner's conviction was affirmed on appeal. People v. Frazier*,* No. 275083 (Mich.Ct.App. March 25, 2008); lv. den. 482 Mich. 1031, 769 N.W.2d 198

4

(2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Did the trial court abuse its discretion in refusing to grant a mistrial after the prosecution recklessly, if not knowingly, presented testimony that Mr. Frazier had previously gotten away with murder and had been hired to kill for money?

II. Was Mr. Frazier's Sixth Amendment right to confront his accusers violated by the admission of numerous self-serving hearsay statements of co-defendant John Williams?

III. Was defense counsel constitutionally ineffective in failing to object to the use of co-defendant's hearsay statements against him or failing to move for a mistrial when it was revealed that there would be no opportunity to cross-examine the co-defendant?  Was counsel also ineffective for failing to ensure the trial court instructed the jury to disregard prejudicial testimony that Mr. Frazier had gotten away with murder and would kill for money?

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. Williams v.

Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may

not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral

review of a state-court decision must be consistent with the respect due state

courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

The "AEDPA thus imposes a 'highly deferential standard for evaluating

state-court rulings,'and 'demands that state-court decisions be given the benefit

of the doubt.'" Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)((quoting Lindh v.

Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24

(2002)(per curiam)).  "[A] state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct.

770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The

Supreme Court has emphasized "that even a strong case for relief does not

6

mean the state court's contrary conclusion was unreasonable." Id. ( citing

Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to §

2254(d), "a habeas court must determine what arguments or theories supported

or...could have supported, the state court's decision; and then it must ask

whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision" of the Supreme

Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be."

Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the

AEDPA, does not completely bar federal courts from relitigating claims that have

previously been rejected in the state courts, it preserves the authority for a

federal court to grant habeas relief only "in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with" the

Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that

habeas corpus is a 'guard against extreme malfunctions in the state criminal

justice systems,' not a substitute for ordinary error correction through appeal." Id.

(citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J.,

concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is

inconsistent with the presumption that state courts know and follow the law."

Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal

court, a state prisoner is required to show that the state court's rejection of his

claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

### III.  Discussion

### A.  Claim # 1.  The failure to declare a mistrial claim.

Petitioner first contends that the trial court erred in refusing to grant a mistrial after the prosecutor elicited testimony that petitioner was a murderer.

Richard Peeples testified that Gadie had a "business relationship" with Frazier, whom Gadie "kept ... around for the muscle."  When asked by the prosecutor to elaborate on this, Peeples testified that Gadie kept petitioner around because he knew that he "was a murderer."  Petitioner's counsel objected and the trial judge sustained the objection and ordered this testimony stricken from the record.  Later, when the prosecutor asked Peeples if Gadie explained what Frazier would do for money, Peeples responded that "He would kill somebody, because he already said that he beat a murder case."  The trial court again sustained counsel's immediate objection and ordered this testimony stricken from the record. (Tr. 11/14/2006, pp. 109-10).  Petitioner later moved for a mistrial, which the Court denied. (Id., pp. 185-87).  The trial judge later instructed the jury in her final instructions that they were not to consider any evidence that had been stricken from the record. (Tr. 11/16/2006, p. 8).

On appeal, the Michigan Court of Appeals rejected petitioner's claim:

8

The trial court did not abuse its discretion in failing to grant a mistrial. Although testimony that Frazier was involved in and tried for murder was prejudicial, it did not impair his ability to receive a fair trial. Indeed, this was a brief, passing reference. Further, the impact of this statement pales in comparison to the strong circumstantial evidence presented against Frazier as noted above.

Frazier argues that the prosecutor intentionally elicited Peeples's second reference to Frazier's involvement with murder. This argument fails. In evaluating issues of prosecutorial misconduct, this Court must examine the prosecutor's remarks in context, on a case-by-case basis. A prosecutor may not knowingly elicit inadmissible evidence. But not every instance of the mention of an inappropriate subject before a jury warrants a mistrial. Specifically, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial."

In context, it does not appear that the prosecutor knowingly elicited the testimony at issue. Specifically, Peeples's answer that Frazier "would kill somebody, because he already said that he beat a murder case" was not responsive to the question posed: "Did [Gadie] ever express anything about what [Frazier] would do for money?" This question, on its face, did not ask about any prior bad acts, let alone any prior court proceedings. Thus, the prosecutor's line of questioning was not improper and was insufficient for the granting of a mistrial. Moreover, contrary to defendant's argument, the trial court instructed the jury to disregard any testimony that the court had ordered stricken. Thus, Frazier's claim fails.

Frazier, Slip. Op. at * 6 (internal citations and footnote omitted).

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. Walls v. Konteh, 490 F. 3d 432, 436 (6th Cir. 2007); See also Clemmons v. Sowders, 34 F 3d 352, 354-55 (6th Cir. 1994).

In the present case, Peeples's two brief, unprompted, references to petitioner being a murderer were not so prejudicial as to require a mistrial, in

light of the fact that the judge ordered that the testimony be stricken from the record and the prosecutor never raised the issue again during the trial. See U.S. v. Crider, 144 Fed. Appx. 531, 534-35 (6th Cir. 2005)(defendant was not entitled to a mistrial following an unprompted statement from government witness concerning defendant's involvement in a homicide, where statement was not exceptionally prejudicial, and trial court gave curative jury instruction advising jury to disregard the statement); See also Taylor v. McKee, No. 2009 WL 1514371, * 10-11 (E.D. Mich. May 29, 2009)(habeas petitioner was not entitled to relief on his claim that the trial court erred in denying habeas petitioner's motion for mistrial following a comment made by a witness that petitioner was a "killer", where the remark was not explored or repeated, and the trial court gave the jury a curative instruction).  Moreover, the judge's final instructions to the jury advised them not to consider anything that had not been admitted into evidence. A jury must be presumed to have followed a trial court's instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000).  In light of the fact that Peeples's remarks about petitioner being a murderer were brief and unsolicited, as well as the fact that the trial judge struck the remarks from the record and later advised the jury not to consider any evidence that had been so stricken, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in rejecting petitioner's first claim.  Petitioner is not entitled to habeas relief on his first claim.

10

**B.  Claim # 2.  The Confrontation Clause claim.**

Petitioner next alleges that his Sixth Amendment right to confrontation was violated when the trial court admitted several out-of-court statements made by his co-defendant, John Henry Williams, in which Williams accused petitioner of being the shooter.  Petitioner contends that the admission of Williams' statements at their joint trial, where Williams did not testify, was contrary to the holding in Bruton v. United States, 391 U.S. 123, 127-28 (1968), in which the Supreme Court held that a defendant is denied the constitutional right of confrontation where a non-testifying co-defendant's incriminating confession is admitted at a joint trial.

In rejecting petitioner's claim, the Michigan Court of Appeals concluded that petitioner had failed to establish that his right to confrontation had been violated, because Williams' statements were not testimonial. Frazier, Slip. Op. at * 4-5.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. See Crawford v. Washington, 541 U.S. 36 (2004).  However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. See Davis v. Washington, 547 U. S. 813,

823-26 (2006); See also Desai v. Booker, 538 F.3d 424, 425-26 (6th Cir. 2008).

Testimonial statements do not include remarks made to family members or

acquaintances, business records, or statements made in furtherance of a

conspiracy. Crawford, 541 U.S. at 51-52, 56.  In holding that the Sixth

Amendment right to confrontation does not apply to non-testimonial statements,

the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay].  It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of *824 the English Language (1828).  'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' Ibid.  An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

> Davis, 547 U.S. at 823-24 (quoting Crawford, 541 U.S., at 51).

Moreover, "[B]ecause it is premised on the Confrontation Clause, the

Bruton rule, like the Confrontation Clause itself, does not apply to nontestimonial

statements." U.S. v. Johnson, 581 F. 3d 320, 326 (6th Cir. 2009).

The statements from John Henry Williams to Kareemah Greer, Deville

Thedford, Richard Peeples, and Donnell Hornbuckle concerning petitioner's

involvement in the robbery and murder do not qualify as testimonial statements

covered by the Confrontation Clause because they were casual remarks made

to a friend or family member and not ones made to law enforcement. See

Deshai, 538 F. 3d at 427; See also Jackson v. Renico, 179 Fed. Appx. 249, 255

(6th Cir. 2006).  Morever, because the Confrontation Clause has no applicability to non-testimonial statements, they may be admitted even if they lack indicia of reliability. See Whorton v. Bockting, 549 U.S. 406, 420 (2007).  Thus, the admission of Williams' statements to Greer, Thedford, Peeples, and Hornbuckle did not violate petitioner's Sixth Amendment right to confrontation.

Moreover, any error in the admission of Williams' out-of-court statements was harmless error at best.  A Confrontation Clause error is subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).  The standard for showing harmless error on collateral review is "considerably less favorable" to a habeas petitioner than the standard which is applied on direct review.  On direct review, before a federal constitutional error can be held harmless, the court must be able to declare that the error was harmless beyond a reasonable doubt.  However, the harmless error test for collateral review is different.  A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the jury's verdict. Ford v. Curtis, 277 F. 3d 806, 809 (6th Cir. 2002)(quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  Under this standard, a habeas petitioner is not entitled to habeas relief unless he can establish that the trial error resulted in "actual prejudice." Id.  Thus, a federal habeas court can grant habeas relief only if a habeas petitioner carries the burden of showing that a Confrontation Clause error had a substantial and injurious effect or influence on the jury's verdict. Bulls v. Jones, 274 F. 3d 329,

13

335 (6th Cir. 2001).

In determining whether a <u>Bruton</u> violation is harmless, a reviewing court must decide "'whether the 'minds of an average jury''' would have found the State's case against a defendant "'significantly less persuasive''' had the incriminating portion of the co-defendant's statement been excluded. <u>Stanford v. Parker</u>, 266 F. 3d 442, 456 (6th Cir. 2001)(citing <u>Hodges v. Rose</u>, 570 F. 2d 643, (6th Cir. 1978)(quoting <u>Schneble v. Florida</u>, 405 U.S. 427, 432 (1972)). "An erroneous admission of a non-testifying co-defendant's confession can constitute harmless error where the defendant claiming a <u>Bruton</u> violation confessed to full participation in the crimes." <u>Stanford</u>, 266 F. 3d at 456.

In the present case, there was additional evidence linking petitioner to the murder and the robbery. Larry Oldham testified that while in the Wayne County Jail, he overheard petitioner instruct Williams to testify that he left the house before the victim was killed because petitioner explained that he could handle this more easily since he had been through this before. Oldham also heard petitioner mention a dresser drawer that was pulled out and something being dumped out of a garbage bag. This was further circumstantial evidence which linked petitioner to the murder, because the evidence at trial showed that bags of clothing were found torn open in the basement near the victim's body, the dresser drawers in the victim's bedroom were open, and the house was messy. Moreover, there was testimony at trial that the police discovered a

14

nine-millimeter bullet casing near the victim's body and that petitioner was
known to carry a nine-millimeter handgun. Frazier, Slip. Op. at * 5.  In light of this
additional circumstantial evidence, the admission of Williams' out-of-court
statements incriminating petitioner was harmless error at most.

Additionally, petitioner told the victim's brother that although Williams was
the person responsible for shooting the victim, he and Williams robbed the
victim's house after Williams killed him.  Petitioner's statement to the victim's
brother, if believed, was enough to convict him of first-degree felony murder on
an aiding and abetting theory, even if he was not the actual shooter.

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high
risk of death or great bodily harm with knowledge that death or great
bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the
commission of one of the felonies enumerated in the felony murder
statute.

Matthews v. Abramajtys, 319 F. 3d 780, 789 (6th Cir. 2003)(citing to
People v. Carines, 460 Mich. 750, 759; 597 N.W.2d 130 (1999)).

The Michigan Supreme Court has indicated that "[A] jury can properly infer
malice from evidence that a defendant set in motion a force likely to cause death
or great bodily harm." People v. Aaron, 409 Mich. 672, 729; 299 N.W.2d 304
(1980); See also Carines, 460 Mich. at 759(internal citation omitted).  "Malice
may also be inferred from the use of a deadly weapon." Carines, 460 Mich. at

15

759.

To support a finding under Michigan law that a defendant aided and

abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some
> other person;
> 2. the defendant performed acts or gave encouragement that
> assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had
> knowledge that the principal intended its commission at the time he
> gave aid and encouragement.

Riley v. Berghuis, 481 F. 3d 315, 322 (6th Cir. 2007)(citing Carines, 460
Mich. at 757-58).

A number of cases have held that a defendant's participation in an armed

robbery, while either he or his co-defendants were armed with a loaded firearm,

manifested a wanton and reckless disregard that death or serious bodily injury

could occur, to support a finding that the defendant acted with malice

aforethought, so as to support a conviction for felony-murder on an aiding and

abetting theory. See Hill v. Hofbauer, 337 F. 3d 706, 719-20 (6th Cir. 2003)(intent

for felony murder "can be inferred from the aider and abettor's knowledge that

his cohort possesses a weapon."); See Carines, 460 Mich. at 759-60; Harris v.

Stovall, 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998); People v. Turner, 213 Mich.

App. 558, 572-73; 540 N. W. 2d 728 (1995);overruled in part on other grounds

People v. Mass, 464 Mich. 615; 628 N.W.2d 540 (2001); People v. Hart, 161

Mich. App. 630, 635; 411 N.W. 2d 803 (1987); Meade v. Lavigne , 265 F. Supp.

2d 849, 858-59 (E.D. Mich. 2003); See also Redmond v. Jackson, 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003)(petitioner not entitled to tolling of the AEDPA's statute of limitations on a claim that he was actually innocent of felony-murder, finding that petitioner's act of providing a firearm to be used in an armed robbery demonstrated a wanton and wilful disregard of the fact that a person could be killed or suffer great bodily harm during the course of the robbery).

In light of the fact that petitioner admitted to the victim's brother that he assisted in the armed robbery of the victim, there was sufficient evidence to convict him of first-degree felony murder, even if Williams' statements had been excluded.  Petitioner is not entitled to relief on his second claim.

**C.  Claim # 3.  The ineffective assistance of counsel claims.**

Petitioner lastly claims that he was deprived of the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the

17

presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. Id.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 130 S. Ct. 383, 390-91 (2009).

Petitioner first contends that counsel was ineffective for failing to object to the admission of Williams' out-of-court statements or for failing to move for a mistrial after learning that his co-defendant would not testify, so as to avoid a violation of Bruton.

As mentioned when rejecting petitioner's Confrontation Clause claim, supra, the admission of Williams' statements to Greer, Thedford, Peeples, and Hornbuckle did not violate petitioner's Sixth Amendment rights or the holding in Bruton because they were nontestimonial.  Because the admission of Williams' out-of-court statements to these individuals did not violate the holding in Bruton, counsel's failure to object to their admission or to move for a mistrial on this

18

basis did not amount to ineffective assistance of counsel. See <u>Johnson</u>, 581 F. 3d at 328.

Petitioner next contends that counsel was ineffective for failing to request a curative instruction regarding Peeples's testimony that petitioner was a murderer.  Although counsel did not request a specific curative instruction, he objected both times to Peeples's references to petitioner being a murderer. Each time, the trial judge sustained the objection and ordered that the testimony be stricken from the record.  During final instructions, the judge informed the jury that they were not to consider any evidence or testimony that had been stricken during the course of the trial.  In light of the fact that any curative instruction would have been repetitive of the trial judge's final instruction to ignore any evidence that had been stricken by the judge from the record, counsel's failure to request a curative instruction was not ineffective assistance of counsel. See e.g. <u>U.S. v. Herron</u>, 371 Fed.Appx. 913, 915-16 (10th Cir. 2010); <u>cert. den.</u> 131 S.Ct. 951 (2011).  Petitioner is not entitled to habeas relief on his third claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. See Millender v. Adams, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. See Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not

frivolous; it does not require a showing of probable success on the merits.

<u>Foste</u>r, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this

Court's resolution of petitioner's claims, the issues are not frivolous; therefore,

an appeal could be taken in good faith and petitioner may proceed <u>in forma</u>

<u>pauperis</u> on appeal. <u>Id.</u>

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of

Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to

appeal <u>in forma pauperis</u>

<u>s/Marianne O. Battani</u>
**HONORABLE MARIANNE O. BATTANI**
**UNITED STATES DISTRICT JUDGE**

Dated: <u>November 10, 2011</u>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Opinion and Order
was served upon the Petitioner via ordinary U.S. Mail and Counsel for the
Respondent, electronically.

<u>s/Bernadette M. Thebolt</u>
Case Manager